UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

H.L., a minor, by her mother and next friend,
Carrie R. Walbrun on behalf of Tim J. Langenhuizen,

                Plaintiff,

      v.                                                          Case No. 19-cv-1680-bhl

KILOLO KIJAKAZI, Acting Commissioner of
Social Security Administration,

                Defendant.

---

## DECISION AND ORDER

---

       H.L. seeks review of a July 16, 2019 administrative law judge's (ALJ) decision denying her late father Tim J. Langenhuizen's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. For the reasons below, the ALJ's decision will be reversed, and the case remanded for further proceedings consistent with this decision, pursuant to 42 U.S.C. §405(g), sentence four.

### PROCEDURAL BACKGROUND

       On May 31, 2013, Tim J. Langenhuizen filed claims for DIB and SSI. (ECF No. 17 at 1.) Those claims were denied initially, upon reconsideration, and after a hearing before an ALJ. (*Id.*) After the Appeals Council denied his request for review, Langenhuizen appealed to this Court. (*Id.*) The parties then agreed to a voluntary remand. (*Id.* at 1-2.) On remand, the Appeals Council determined that the ALJ had not properly considered all of Langenhuizen's ailments and remanded for further consideration. (*Id.* at 2.) On May 23, 2019, the ALJ held a second hearing at which Langenhuizen and various medical professionals testified. (*Id.*) In a decision dated July 16, 2019, the ALJ rendered another unfavorable decision. (*Id.*) Langenhuizen did not request that the Appeals Council review the ALJ's decision, and it became final on September 15, 2019. (ECF No. 1 at 2.) Langenhuizen filed this appeal on November 13, 2019.

On December 10, 2020, with his appeal pending, Langenhuizen died. On November 19, 2021, the Court granted Plaintiff's counsel's motion to substitute Langenhuizen's minor daughter, H.L., as named Plaintiff. (ECF Nos. 39, 40.)

## FACTUAL BACKGROUND

On March 29, 2011 (his alleged onset date), Langenhuizen visited the emergency room and complained of shortness of breath. Thus began a nearly decade-long odyssey of medical appointments that begat numerous diagnoses, including: cardiac disorders, diabetes mellitus with neuropathy, clinical obesity, adjustment disorder with mixed anxiety and depression, sleep apnea, a respiratory disorder, a spinal disorder, kidney disease, hypertension, and scrotal problems. (ECF No. 17 at 4-9, ECF No. 13-13 at 8.) According to his death certificate, Langenhuizen died due to chronic systolic heart failure. (ECF No. 39-1.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits must be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id*. In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal citations and quotation marks omitted). In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

On appeal, H.L. has requested remand or reversal of the ALJ's decision based on three primary issues. (ECF No. 17.) First, H.L. argues that the ALJ failed to properly evaluate Langenhuizen's residual functional capacity (RFC). Second, H.L. argues that the ALJ failed to

properly evaluate Langenhuizen's subjective symptoms. Finally, H.L. argues that the vocational expert (VE) failed to provide a reliable basis for his jobs data. Because the ALJ failed to properly develop and affirmatively misconstrued the evidence related to some of these challenges, the case will be remanded for further proceedings.

I. **The ALJ's Assessment of Langenhuizen's Residual Functional Capacity Was Not Sufficiently Supported.**

A claimant's residual functional capacity or RFC is "an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-1001 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The assessment "must be . . . based on all the relevant evidence in the record." *Young*, 362 F.3d at 1001.

The parties dispute the validity of the ALJ's determination of Langenhuizen's RFC. In denying Langenhuizen's claim, the ALJ found that, despite his impairments, Langenhuizen retained the RFC to perform sedentary work, but with a litany of limitations. (ECF No. 13-13 at 11.) H.L lodges numerous objections to this determination, but the Court will focus its attention on the three meritorious ones: (1) the ALJ ignored evidence that contradicted Dr. Hugh Savage; (2) the ALJ improperly gave little weight to Cooper Witt's functional capacity evaluation report; and (3) the ALJ improperly concluded that Langenhuizen's inability to concentrate did not impact his ability to perform unskilled work. Because these errors are not harmless, the case must be remanded for further consideration.

A. **The ALJ Improperly Failed to Consider Medical Evidence in the Record that Conflicted with Dr. Savage's Opinion.**

Dr. Savage opined that Langenhuizen did not, as Langenhuizen testified, need to elevate his legs during the workday because his leg swelling could also be resolved by diuretics or compression socks. (ECF No. 13-14 at 71.) The ALJ gave this opinion "great weight" and did not incorporate any limitations related to leg-raising in his RFC determination. (ECF No. 13-13 at 11, 18.) But, as H.L. points out, Dr. Savage's was one in a sea of opinions. The finest catch in the school belongs to Dr. Toni Jo Neal, a podiatrist who evaluated Langenhuizen on February 11, 2019. According to Dr. Neal, Langenhuizen could not "wear compression stockings due to heart failure." (ECF No. 13-38 at 14.) As for diuretics, Langenhuizen was *already* taking them. (ECF

No. 17 at 28-29.) The ALJ chose not to consider this contradictory evidence. That will not do. *See McFadden v. Berryhill*, 721 F. App'x 501, 505 (7th Cir. 2018) (holding that an ALJ must confront the evidence that contradicts his decision rather than ignore it). On remand, the Commissioner should consider the evidence in the record that may have supported additional RFC limitations related to leg-raising and incorporate such limitations as appropriate.

**B. The ALJ Improperly Gave Little Weight to Cooper Witt's Functional Capacity Evaluation Report.**

On April 10 and 11, 2019, physical therapist Cooper Witt ran Langenhuizen through a battery of tasks designed to objectively measure his job-related physiological functioning. (ECF No. 13-38 at 43.) Witt then completed a standard evaluation form, later incorporated into the administrative record. (*Id.*) As part of his review of that record, Dr. Savage studied Witt's report and concluded that it showed that Langenhuizen "self-limited" during many of the tests. (ECF No. 13-14 at 59.) The ALJ used this opinion, in part, to justify affording the evaluation "little weight." (ECF No. 13-13 at 20.)

As it turns out, though, Dr. Savage mistook the grading key on page three for the actual evaluation. (*See* ECF No. 13-38 at 45.) Witt's report never indicated that Langenhuizen "self-limited" on *any* of the tested activities. In fact, Witt characterized Langenhuizen as cooperative and "willing to work to maximum abilities in all test items." (*Id.* at 44.) This is a significant misinterpretation, akin to concluding that a student failed trigonometry simply because his report card contained a key that explained the criteria for an "F" even though that grade did not apply. Such an error necessitates remand unless the ALJ's other reasons for giving the evaluation little weight suffice on their own. *See Bassett v. Astrue*, 641 F.3d 857, 860 (7th Cir. 2011) (describing an ALJ's mischaracterization of evidence as an egregious error).

They do not. In addition to citing Dr. Savage's testimony, the ALJ questioned the completeness of Witt's evaluation and noted that, as a physical therapist, Witt was not an acceptable treating provider. (ECF No. 13-13 at 20.) He also called the evaluation "a mere two-day snapshot" of Langenhuizen's functioning and thus not as persuasive as the overall medical record, which spanned eight years. (*Id.*)

Regarding the completeness of the document, the record shows that Witt did not provide limitations and recommendations in the push-pull, hand grip, and hand coordination portions of the form evaluation report. (ECF No. 13-38 at 46-7.) However, the incomplete portions represent a relatively insignificant percentage of the testing, insufficient to justify giving little weight to the

entire evaluation. *Cf*. SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996) (clarifying that "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions," and individual decisions to adopt or reject *each* opinion may be necessary).

Further, although Witt is a licensed physical therapist and therefore not an "acceptable medical source" under Social Security Ruling 06-3p (SSR 06-3p), he is an "other source." *See* 20 C.F.R. §404.1513(d)(1) (effective April 2, 2007 – June 12, 2011) (therapists expressly included as "other sources"). "Other sources" cannot establish the existence of a medically determinable impairment, but "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006). When evaluating opinions from medical sources who are not "acceptable medical sources," the "weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors." *Id*. at *4. But though the weight afforded may vary, an ALJ commits reversible error when he rejects an "other medical source" opinion for being contradicted by the objective medical record but fails to identify what specific evidence contradicts the opinion. *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010) (remanding, in part, due to ALJ's failure to identify what evidence contradicted other source's findings).

Here, instead of identifying specific contradictory evidence, the ALJ simply dismissed Witt's opinion as "a mere two-day snapshot of the claimant's functioning." (ECF No. 13-13 at 20.) Better two days than none at all. The ALJ had to do more than vaguely gesture toward an 1,800-page record and proclaim that contradictory evidence existed somewhere within like a needle in a haystack. That is not how one proffers "specific" evidence. And it is no answer to state that the ALJ cited Dr. Savage. As was already established, Dr. Savage misread the evaluation. It should go without saying that the contradictory evidence the ALJ relies on to reject an "other medical source" must have a basis in the record.

Technical errors notwithstanding, Defendant argues that nothing in Witt's evaluation would alter the ultimate result on remand, so the Court should affirm the Commissioner's decision. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (error is harmless if ALJ would reach same result on remand). To the contrary, appropriate consideration of the functional capacity evaluation report might render bunk all of the VE's proposed employment options.

For example, based on Langenhuizen's "very low" hand dexterity scores on the Minnesota Rate of Manipulation Test, Witt recommended "rest breaks as needed with repetitive arm work." (ECF No. 13-38 at 47.) The ALJ glossed over this without so much as a furtive nod to contradictory evidence. Yet he proposed an RFC limitation—"no more than frequent bilateral handling and fingering"—out of step with Witt's analysis. Based on the ALJ's RFC determination, the VE determined that Langenhuizen could perform occupations such as document preparer, optical assembler, and printed circuit board inspector. (ECF No. 13-14 at 84-85.) But these jobs all require reaching and handling objects between 1/3 and 2/3 of the workday. Dictionary of Occupational Titles Nos. 249.587-018, 713.687-018, 726.684-110. And optical assemblers and printed circuit board inspectors must have finger and manual dexterity abilities in the middle third of the population, significantly higher than Langenhuizen's score on the Minnesota Rate of Manipulation Test, which placed him the first percentile. (ECF No. 13-38 at 47.) If an ALJ erroneously fails to justify his RFC determination and that determination leads the VE to identify inappropriate jobs, the ALJ's error is not harmless. *See* SSR 96-9p, 1996 WL 374185, at *8 (Jul. 2, 1996) ("Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. . . . Any *significant* manipulative limitation . . . will result in a significant erosion of the unskilled sedentary occupational base.").

### C. Though Perhaps Not Reversible Error on its Own, the ALJ's Assessment of Langenhuizen's Ability to Concentrate Should be Reviewed on Remand.

The ALJ found, "[w]ith regard to concentrating, persisting, or maintaining pace, [Langenhuizen] ha[d] a moderate limitation," which left him capable of performing unskilled work. (ECF No. 13-13 at 10-11.) In support, the ALJ cited Langenhuizen's admitted ability to pay attention for one hour. (*Id.* at 11, ECF No. 13-7 at 46.) H.L. argues that it is the ability to pay attention for *two* hours, not one, that matters. She relies on the Program Operations Manual System (POMS) handbook, a guide used internally by Social Security Administration employees. *See Schweiker v. Hansen*, 450 U.S. 785, 790 (1981). While the handbook has no legal force, it may be persuasive. *O'Donnell v. Saul*, 983 F.3d 950, 958 (7th Cir. 2020). In support of remand, H.L. highlights the handbook's list of eight "mental abilities needed for *any job*," including "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure." POMS DI 25020.010(B)(2)(a) (emphasis added). She also notes that the POMS further provides that, to

qualify for unskilled work, a person must have the ability to "maintain attention for extended periods of 2-hour segments (concentration is not critical)." *Id.* at (B)(3)(d).

During cross examination, Langenhuizen's lawyer asked Dr. Michael Rabin, a licensed clinical/forensic psychologist, how Langenhuizen's moderate limitations in concentration, persistence, and pace impacted his ability to maintain attention or concentration for two-hour segments. (ECF No. 13-14 at 22.) Dr. Rabin conceded that he couldn't "say by two-hour segments, but essentially because [Langenhuizen] has anxiety and depression it would be more difficult for him to maintain attention and concentration." (*Id.*) No one, including the ALJ, probed further. And the ALJ never determined whether the record supported Langenhuizen's ability to maintain attention for any period of time longer than one hour. This might be harmless error, but because this case will be remanded on other grounds, the Commissioner should also reconsider whether substantial evidence supported Langenhuizen's ability to maintain attention for two-hour segments, and, if not, whether that changes the RFC assessment, which contemplates "unskilled work" in apparent contradiction of the POMS handbook.

## II. The ALJ's Conclusion that Langenhuizen's Subjective Symptoms Were Not Entirely Consistent with the Medical Record Is Not Supported by Substantial Evidence.

H.L. contends that the ALJ erred in evaluating Langenhuizen's subjective symptoms by (1) improperly focusing on Langenhuizen's history of tobacco and cocaine use; (2) using Langenhuizen's noncompliance with recommended treatment as evidence that he exaggerated his ailments, without considering good explanations for noncompliance; and (3) selectively reviewing the objective evidence in the record. (ECF No. 17 at 23-29.) The record does not support H.L.'s first and third objections. But the second has merit.

When evaluating a claimant's subjective statements about the intensity and persistence of his symptoms, an ALJ must often make a credibility determination concerning the limiting effects of those symptoms. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Review of an ALJ's symptom evaluation is highly deferential. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (court will overturn ALJ's credibility determination only if "patently wrong"); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("As long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference."). If a claimant's statements regarding his symptoms and limitations are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record by considering a variety of factors, including the claimant's daily activities; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; and other treatment the claimant has received for relief of the pain or other symptoms. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (applicable to determinations made on or after March 28, 2016). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. at *10.

In this case, the ALJ concluded that the record failed to fully substantiate Langenhuizen's allegations of disabling symptoms, underscoring that "[e]xtensive noncompliance with treatment is documented throughout the treatment notes." (ECF No. 13-13 at 14.) ALJs are allowed to draw a negative credibility inference from a claimant's treatment noncompliance. *See* SSR 16-3p, 2017 WL 5180304 at *9 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). But they must first consider explanations beyond malingering. *See id*. ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ errs when he weighs a claimant's lack of compliance with medical treatment without exploring claimant's reasons for that lack of compliance).

Here, the record reflects a pattern of ostensibly noncompliant behavior: (1) Dr. Norman Schroeder II, Langenhuizen's doctor until 2013, discharged him due to no-shows, (ECF No. 13-13 at 14-15); (2) a hospital to which Langenhuizen was admitted noted that he was not faithfully using his BiPap machine, (ECF No. 13-14 at 75-76); (3) Langenhuizen did not attend recommended monitored exercise programs, (ECF No. 13-13 at 14); (4) he declined recommended AV node ablation, (*Id.* at 15); and (5) he skipped multiple urology appointments. (*Id.*) But for each bombshell, there is a defuser. For instance, Langenhuizen testified that, long before Dr. Schroeder discharged him for missing appointments, he had switched providers to Dr. Megan Kane. (ECF No. 13-3 at 38-39, ECF No. 13-14 at 75.) Dr. Schroeder, unaware of this, mistakenly believed Langenhuizen had been altogether truant. Additionally, the reason a hospital believed

Langenhuizen had not used his BiPap was because none of the staff members knew how to read the machine's chip. (ECF No. 13-14 at 75-76.) Langenhuizen's pulmonologist, familiar with the machine, later confirmed his compliance. (*Id.* at 76.) With respect to the monitored exercise program, Langenhuizen could not afford to attend; his insurance refused to cover it, and he lacked the out-of-pocket funds to make up the difference. (*Id.* at 77.) As for the AV node ablation, cardiologist Dr. Silja Majahalme stated that Langenhuizen was "not a very good candidate . . . because of a significant enlargement of left atrium." (ECF No. 13-20 at 2.) Lastly, Langenhuizen's absence at several urology appointment has nothing to do with the ALJ's analysis of the impairments found severe. (ECF No. 17 at 25.)

The ALJ might have overlooked this evidence or simply refused to articulate why it was unsatisfactory. In either direction, error lies. *See Ray v. Berryhill*, 915 F.3d 486, 490-91 (7th Cir. 2019) (noting ALJs "must not draw inferences about a claimant's lack of treatment without exploring the reasons for the inaction"). Because proper inquiry into noncompliance may have altered the credibility determination, as well as the RFC assessment, the Court cannot find that the ALJ's evaluation of Langenhuizen's subjective symptoms rests on substantial support. Remand is required.

### III. The ALJ's Step Five Determination Was Not Supported by Substantial Evidence.

Just as pollution flows downstream, an ALJ's mistakes in the earlier steps of the five-step evaluation sequence infect his later analysis. But compounding errors aside, H.L. identifies an additional problem with the ALJ's step five determination: the ALJ failed to allow for meaningful cross examination of the VE.

During the hearing, the VE testified that a hypothetical person with Langenhuizen's RFC could perform jobs that existed in sufficient numbers in the national economy such as document preparer, optical assembler, and printed circuit board inspector. (ECF No. 13-14 at 82-84.) On cross examination, Langenhuizen's lawyer questioned the VE about just how abundant these jobs were. (*Id.* at 85-87.) The VE explained that he based his estimates on statistical data provided through SkillTRAN software. (*Id.* at 86-91.) But Langenhuizen's lawyer countered that she had crunched the numbers through the same software and found far fewer available jobs. (*Id.* at 86-91.) Because the hearing had run long, the ALJ abruptly shut down this line of questioning and told counsel that she could ask the VE more questions at a later time. (*Id.* at 88, 90, 92, 94.)

This later time never arrived, so Langenhuizen's counsel instead submitted a post-hearing brief, objecting to the reliability of the VE's testimony. (ECF No. 13-18 at 41-3.) The ALJ overruled the objection and found the VE's testimony reliable. (ECF No. 13-13 at 22.) Based on that testimony, the ALJ concluded that Langenhuizen was able to perform other work that existed in the national economy and, accordingly, was not disabled. (*Id.*)

At step five of the sequential five-step disability analysis, the Commissioner bears the burden of presenting evidence establishing that the claimant possesses the RFC to perform work that exists in significant numbers in the national economy. 20 C.F.R. §404.1560(c)(2); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). For this final step, ALJs generally rely on the Dictionary of Occupational Titles (DOT) for information about the typical characteristics of jobs as they exist in the economy. *Weatherbee*, 649 F.3d at 569. But the DOT only describes job duties and requirements; it does not indicate the prevalence of a given job in the national economy. A separate publication, the Department of Labor's compilation of Occupational Employment Statistics,[1] provides estimates about the prevalence of certain jobs, but classifies jobs more broadly than the DOT code. *Herrmann v. Colvin*, 772 F.3d 1110, 1113-14 (7th Cir. 2014). "The use of one system to supply the job titles and another to provide the number of jobs creates a matching problem: a one-to-one correlation does not exist."[2] *See Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018). Consequently, VEs must employ some heuristic to estimate just how many DOT positions are actually available. *See id.* at 965-66. And though they need not hit the bullseye, the VE's approximation must be "'the product of a reliable method.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Chavez*, 895 F.3d at 968). Additionally, when "the claimant challenges the job-number estimate, the ALJ 'must require the VE to offer a reasoned and principled explanation' of the method he used to produce it." *Id.* at 822 (quoting *Chavez*, 895 F.3d at 970). This "explanation must be sufficient to instill some confidence that the estimate was not 'conjured out of whole cloth.'" *Id.* (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)).

---

[1] *See* https://www.bls.gov/oes/tables.htm (last visited March 23, 2022).
[2] To complicate matters further, "it is readily accepted that the DOT, last updated in 1991 and generally containing information describing jobs as they existed in 1977, is outdated, if not downright obsolete." *Yanke v. Kijakazi*, No. 20-CV-1055, 2021 WL 4441188, at *3 (E.D. Wis. Sept. 28, 2021) (citing *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014).

In this case, Langenhuizen's lawyer took issue with the VE's data.[3] Rather than allow the VE to describe his methodology "cogently and thoroughly," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019), the ALJ complained that Langenhuizen wanted him to "sit here until the cows come in" and concluded that the inevitability of some uncertainty in the numbers rendered irrelevant *any* inquiry into the method by which those numbers were obtained. (ECF No. 13-14 at 90.) This was error. *See, e.g.*, *Dimmett v. Colvin*, 816 F.3d 486, 489 (7th Cir. 2016) (criticizing ALJ for "uncritically accepting the vocational expert's testimony"). Without a reasoned and principled explanation of the method used to produce it, the VE's data was insufficient to meet the substantial evidence standard, and the ALJ was not entitled to rely on it. 42 U.S.C. §405(g); *Brace*, 970 F.3d at 821-22. Because the ALJ failed to adequately inquire into the basis for the VE's job data and instead summarily overruled counsel's objections, the case must be remanded for further consideration.

## IV. Dismissal of Claim for Supplemental Security Income Benefits.

Langenhuizen filed claims for DIB under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§416(i), 423, and SSI under sections 1611 and 1614 of the Act, 42 U.S.C. §§1381(a), 1382(a). Sections 1381(a) and 1382(a) provide, inter alia, for the payment of SSI benefits to those disabled individuals whose income and resources fall below stated levels. Aside from limited exceptions not applicable here, a potential SSI underpayment ceases when the claimant dies. *See* 42 U.S.C. §1383(b)(1)(A) (SSI benefits due decedent may only be paid to surviving spouse living in same household with decedent or to parent(s) of a disabled or blind child living with parent(s)). Because H.L. does not qualify as a recipient of any potential SSI underpayment owed to her deceased father, the claim for SSI benefits will be dismissed.

---

[3] Notably, on September 28, 2018, when the Appeals Council remanded the case, it also cautioned: "before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)." (ECF No. 13-15 at 7.)

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Commissioner's decision denying Langenhuizen's claim for Disability Insurance Benefits under sections 216(i) and 223 of the Social Security Act is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. §405(g), sentence four.

**IT IS FURTHER ORDERED** that Plaintiff's claim for Supplemental Security Income benefits under Sections 1611 and 1614 of the Social Security Act is **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 9, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge